IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| CHATREE DANNY SRIDEJ, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | 2:08-CV-0014-SSC |
| FREDERICK W. BROWN; CITY OF | : | |
| AUBURN; POLICE DEPARTMENT OF THE | : | |
| CITY OF AUBURN; LINDA BLECHINGER, | : | |
| in her official capacity as Mayor of the | : | |
| City of Auburn; JOHN DOE #1; JOHN | : | |
| DOE #2; and JOHN DOE #3, | : | |
| | : | |
| Defendants | : | |

**ORDER**

This case is before the court on Defendants' Motion for Summary Judgment. [Doc. 23]. For the reasons set forth below, the undersigned **ORDERS** that Defendants' motion be **GRANTED**.[1]

## I. **Procedural History**

Chatree Danny Sridej ("Plaintiff") was formerly employed by Defendant City of Auburn in the Auburn Police Department. (See Compl., ¶¶ 12, 28). On January 25, 2008, Plaintiff filed a complaint against Defendants [Doc. 1], alleging that Defendants discriminated against him because of his race (Asian) and national origin (Thai) in violation of Title VII of the Civil Rights Act of 1964, as

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case and it has been referred to the undersigned to conduct all proceedings and order the entry of judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (See Docs. 10, 13).

amended, 42 U.S.C. § 2000e, et seq., ("Title VII") (Count One); retaliated against him for engaging in protected activity in violation of Title VII (Count Two); violated the Family and Medical Leave Act ("FMLA") (Count Three); twice denied him promotion because of his race (Count Four)[2]; and tortiously interfered with his business relationship with Town Center Value Cinemas (Count Five).  Plaintiff has since dismissed his FMLA claim (Count Three).  (See Doc. 11).

Defendants filed their answer on February 16, 2008 [Doc. 9], and discovery proceeded.  Defendants have now filed a motion for summary judgment with accompanying memorandum of law, statement of undisputed material facts and exhibits.  [Doc. 23].  Plaintiff filed a response to Defendants' motion for summary judgment and a response to Defendants' statement of material facts.  [Doc. 27].  Defendants then filed a reply in support of their motion for summary judgment.  [Doc. 28].

## II.  Facts

### A.   Standards for Determining Facts for Summary Judgment

The "facts," for summary judgment purposes only, are derived from the submissions of the parties, as set out in Defendants' "Statement of Material Facts as to Which There is No Genuine Issue to be Tried" [Doc. 23]("Def. SMF"); Plaintiff's response to Defendants' statement of undisputed material facts [Doc. 27]; and the uncontroverted record evidence.

---

[2] As discussed *infra*, Plaintiff did not provide a statutory basis for this claim.

The court notes that, although Plaintiff includes in his response to Defendants' statement of material facts a list titled "Material Facts to Which There is Genu[]ine Issue of Material Fact Exists" [Doc. 27], Plaintiff's "material facts" consist of four issues to be resolved in this case, with no citation to record evidence.   LR 56.1B(2), NDGa., provides that a respondent to a motion for summary judgment "shall include . . . b. [a] statement of additional facts which the respondent contends are material and present a genuine issue for trial" and that "[s]uch separate statement of material facts must meet the requirements set out in LR 56.1B(1)," i.e., "be numbered separately and supported by a citation to evidence proving such fact."

Furthermore, several of Plaintiff's responses to Defendants' statements of material fact simply assert "Disputed," without citation to the record to support the response.   (See Pl. Resp. to Def. SMF, ¶¶ 10, 14, 15, 16, 17, 25, 26, 27, 29). Plaintiff has failed to comply with the requirements of LR 56.1B(2)(a)(2), NDGa.,[3] and these unsupported assertions are insufficient to create issues of fact.

The court has reviewed the citations provided by the parties to determine whether genuine issues of material fact exist to be tried.   However, the court is not obligated to "scour the record" to determine whether such issues exist.  Tomasini

---

[3] That Rule provides: "This Court will deem each of the movant's facts as admitted unless the respondent: (I) directly refutes the movant's facts with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B(1)."

v. Mt. Sinai Med. Ctr. of Fla., Inc., 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004).[4]  The facts are construed in the light most favorable to Plaintiff as the non-movant.  See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001).

**B.    Facts Relevant to Defendants' Motion for Summary Judgment**[5]

Plaintiff was born in Thailand and moved to the United States at age 13. (Def. SMF, ¶ 6).  Plaintiff was hired in June 2004 as a Police Officer for the City of Auburn Police Department and was employed by the City of Auburn.  (Def. SMF, ¶¶ 1, 5; see also Def. Ex. 2 to Sridej Dep.).  Defendant Frederick W. Brown is the Chief of Police of the City of Auburn and was Plaintiff's supervisor. (Def. SMF, ¶ 3).  Defendant Linda Blechinger took office as Mayor of the City of Auburn on January 8, 2008.  (See Def. SMF, ¶ 4).  Plaintiff was not an employee of Frederick W. Brown or Linda Blechinger.  (Def. SMF, ¶ 2).

Plaintiff testified that, in January 2005, Sergeant Danny Kerns made "a racial remark to me . . . insinuating I need to go back and learn to speak better English before I teach any more classes."   (Sridej Dep., pp. 34, 66-67). Approximately a week later, Kerns said to Plaintiff, "How you doing, monkey?" (Sridej Dep., p. 69).

---

[4] Nor is the court required to scour the record to determine if the parties' assertions of fact are supported by record evidence where the parties have failed to provide record citations to support their assertions.

[5] Certain other facts relevant to the court's consideration of the motion are discussed in the body of this Order.

On August 7, 2006, Plaintiff was promoted to Corporal; he believes he should have been promoted to Sergeant at that time. (Sridej Dep., pp. 72-73).

In the Spring of 2007, Plaintiff and other officers were interviewed by members of the law firm of Carothers & Mitchell during an investigation requested by Auburn City Council into alleged morale problems and favoritism in the Auburn Police Department. (See Def. SMF, ¶ 7; see also Brown Aff., Def. Ex. 1, ¶ 3 and Report attached to Brown Aff.). The report of that investigation was issued on April 9, 2007. (Def. SMF, ¶ 8; see also Report attached to Brown Aff.). Chief Brown received and reviewed a copy of that report. (Brown Dep., p. 26).

On June 19, 2007, Plaintiff applied for a promotion from Corporal to Sergeant. (Def. SMF, ¶ 12). In August 2007, Chief Brown selected Corporal Nadeau, a non-Asian, for the position instead of Plaintiff. (See Def. SMF, ¶ 13; see also Brown Aff., ¶ 5).

On August 7, 2007, Brown met with Plaintiff and "remonstrated strongly with" Plaintiff about incidents that had occurred over the past couple of months. (Def. SMF, ¶ 18). Chief Brown testified that these incidents, which he believed were improperly handled by Plaintiff and at least two of which resulted in citizen complaints, included an incident when Plaintiff used pepper spray on a handcuffed person; an incident when he stopped a truck with an unexpired tag; and another incident when he gave a person a ticket for parking in a crosswalk adjacent to a handicap parking spot. (See Brown Dep., pp. 49-54; Brown Aff., Def. Ex. 1, ¶ 6). During the August 7th meeting, Brown called Plaintiff a "traffic Nazi."

5

(Brown Aff., ¶ 6; Sridej Dep., pp. 50-51).

The next day, Plaintiff turned in an excuse from his personal physician indicating that he would be on sick leave from August 9 to August 20, 2007 but providing no reason for the sick leave.  (Def. SMF, ¶ 20).[6]  On August 9, 2007, Chief Brown informed Plaintiff that if he wanted sick leave, the excuse had to document the reason. (Def. SMF, ¶ 22; see also Pl. Ex. 3 to Brown Dep.).  Plaintiff informed his Captain that the reason for the leave was "stress." (Def. SMF, ¶ 22; see also Pl. Ex. 2 to Brown Dep.).  Brown then notified Plaintiff in a memorandum dated August 9, 2007 that prior to his return to full-duty status, Plaintiff was required to "undergo a 'fitness for duty' evaluation administered by our licensed psychologist[,] Dr. Gary Rogers," and that Plaintiff "may not participate in any departmental approved part-time employment." (Pl. Ex. 2 to Brown Dep.).  Brown explained in that memorandum, and in an August 16, 2007 memorandum, that he required Plaintiff to undergo the evaluation because Plaintiff had requested paid sick leave for a stress-related illness.  (Pl. Exs. 2, 4 to Brown Dep.).

Meanwhile, on August 14, 2007, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Def. SMF, ¶ 28; see also Def. Ex. 2 to Sridej Dep.).  In the charge, Plaintiff alleged that he had "been discriminated against because of [his] race (Thai), national

---

[6] A copy of an "Excuse Slip" for Plaintiff is attached to Def. Ex. 3 to the Sridej deposition, and it indicates that Plaintiff was seen in the office of Dr. Richard Schlossberg on August 8, 2007 and was "released to return to work on 8-20-07," but does not indicate the reason for Plaintiff's requested absence from work.

origin (Asian), and retaliated against for opposing unlawful employment practices in violation of Title VII . . . .”  (Def. Ex. 2 to Sridej Dep.).  He asserted that he “began to receive several frivolous write-ups after [he] complained about policy violations, and racially charged comments directed at [him].”  (Id.).

Dr. Rogers performed a fitness for duty evaluation of Plaintiff on August 17, 2007 and found him “unfit for unrestricted duty.”  (Def. SMF, ¶ 24; Pl. Resp. to Def. SMF, ¶ 24; see also Def. Ex. 1 to Sridej Dep.).  In a written report, Rogers wrote, in relevant part, as follows:

> Corporal Sridej appears able to follow instructions and to respond appropriately to this evaluation.   However, he was somewhat defensive in answering test questions as well as during his interview. He did not identify any specific stress as to the reason he requested paid time off.  He did indicate that there was a disciplinary issue, not specific and that he felt it was not handled properly.  He asked for time off due to stress . . . .   The above-undefined issue of stress cannot be addressed thru the interview process and requires additional administrative procurers per agency police [sic].   The results of the testing and inclusive results of the unidentified stressor render the following recommendation: Corporal Danny Sridej is psychologically:  Unfit for Unrestricted Duty.

(Def. Ex. 1 to Sridej Dep.).  Chief Brown terminated Plaintiff on August 20, 2007.

(Sridej Dep., pp. 32-33; Brown Aff., ¶ 10; Pl. Ex. 5 to Brown Dep.).  Brown wrote in Plaintiff’s termination letter:

> On Friday August 17th I received notice from Dr. Gary Rogers that the results of your fitness for duty evaluation were identified as “UnFit for Unrestricted Duty”.   This status removes your arrest powers as a POST certified police officer.
>
> As a result of this evaluation by a Licensed Psychologist your employment with the City of Auburn is terminated effective immediately. (City of Auburn–Personnel Manual Section 7.9 FITNESS

FOR DUTY).

(Pl. Ex. 5 to Brown Dep.).

Plaintiff amended his EEOC charge on or about August 22, 2007 to allege that he had been terminated and to add a claim for disability discrimination.  (Def. Ex. 2 to Sridej Dep.).  The EEOC issued a Notice of Right to Sue to Plaintiff on October 30, 2007.  (Pl. Ex. A to Compl.).  Plaintiff filed the instant complaint on January 25, 2008.  [Doc. 1].

### III.   **Summary Judgment Standard**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has an initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, she must respond by going beyond the pleadings, and by her own

affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. See id. at 322, 324.  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).  It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. Id. at 249.  Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255.

The Eleventh Circuit has explained summary judgment as follows:

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Young v. General Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988) (quoting Celotex Corp., 477 U.S. at 322-23), cert. denied, 488 U.S. 1004 (1989). Furthermore, "[a] nonmoving party, opposing a motion for summary judgment

supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991)(citation omitted), <u>cert. denied</u>, 506 U.S. 952 (1992).  The evidence "cannot consist of conclusory allegations or legal conclusions."  <u>Id.</u> (citation omitted). Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment.  <u>See</u> <u>Midwestern Waffles, Inc. v. Waffle House, Inc.</u>, 734 F.2d 705, 714 (11th Cir. 1984).

## IV.   <u>Discussion</u>

### A.   <u>Liability of Defendants Police Department of the City of Auburn and Linda Blechinger</u>

Defendants argue that " 'Police Department of the City of Auburn' is not a legal entity, and thus is not amenable to suit."  (Doc. 23, Def. Br., p. 5). Defendants also argue that Defendant Linda Blechinger is not a proper defendant because she "did not take office until January 2008, after plaintiff's tenure and termination," and she "did not play any role at all in the events of which plaintiff complains."  (<u>Id.</u> at pp. 5-6).  Defendants contend that because Plaintiff has not sought injunctive or other equitable relief, Plaintiff's claims against Blechinger should be dismissed.  (<u>Id.</u> at p. 6).  Defendants also argue that "Police Department

10

of the City of Auburn" and Blechinger cannot be held liable under Title VII because they were not Plaintiff's employers for purposes of that statute. (Id. at p. 7).

Plaintiff has not responded to Defendants arguments concerning the liability of "Police Department of the City of Auburn" and Linda Blechinger.  Therefore, Plaintiff has abandoned his claims against those Defendants.  See Fedorov v. Bd. of Regents, 194 F. Supp. 2d  1378, 1393 (S.D. Ga. 2002) ("Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (quoting Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.)(en banc), cert. denied, 516 U.S. 817 (1995)); Snyder v. Time Warner, Inc., 179 F. Supp. 2d  1374, 1385 (N.D. Ga. 2001); Welch v. Delta Air Lines, Inc., 978 F.Supp. 1133, 1140 (N.D. Ga. 1997).  Accordingly, Defendants' motion for summary judgment is **GRANTED** on Plaintiff's claims against Defendants Police Department of the City of Auburn and Linda Blechinger.

**B.**     **Plaintiff's Title VII Discrimination Claims (Counts One and Four)**

   **1.**     **Analytical Framework for Title VII Disparate Treatment Claims**

Title VII provides, "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

11

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ."  42 U.S.C. § 2000e-2(a)(1).  A Title VII plaintiff alleging he has been subjected to disparate treatment by his employer may establish a *prima facie* case of discrimination on the basis of statistical proof of a pattern of discrimination or through direct or circumstantial evidence of discriminatory intent.  Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). The framework for proving discriminatory intent by circumstantial evidence was established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) as amplified by Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).[7]  The elements of a circumstantial case of race discrimination are as follows:

> [A] plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job.

Holifield, 115 F.3d at 1562; see also Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1310-11 (11th Cir.), modified, 151 F.3d 1321 (11th Cir. 1998).  The elements of a Title VII claim based on national origin discrimination are the same. Standard v. A.B.E.L. Servs., 161 F.3d 1318, 1330-31 (11th Cir. 1998).

If a plaintiff presents a *prima facie* case through circumstantial evidence,

---

[7] The method of proving unlawful discrimination using the burden-shifting scheme discussed above is frequently referred to as the McDonnell Douglas or McDonnell Douglas/ Burdine framework or burden-shifting analysis. See, e.g., Thomas v. Tenneco Packaging Co., 293 F.3d 1306, 1315 (11th Cir. 2002); Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 510 (11th Cir. 2000).

"the defendant must 'articulate some legitimate, nondiscriminatory reason for the [adverse employment action].' " <u>Bessemer</u>, 137 F.3d at 1310 (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802).  If the defendant satisfies this rebuttal burden by producing evidence of a legitimate rationale for its decision, the plaintiff "may attempt to show that the proffered reason was merely a pretext for the defendant's acts." <u>Bessemer</u>, 137 F.3d at 1310 (citing <u>Burdine</u>, 450 U.S. at 253).  In <u>Burdine</u>, the Court explained the next step, once the defendant employer articulates a legitimate, non-discriminatory reason for the employment decision:

> The plaintiff . . . now  must have the opportunity to demonstrate that the  proffered  reason was not the true reason for the employment decision.   This burden now merges with the ultimate burden of persuading the court that []he has been the victim of intentional discrimination. [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer  or  indirectly  by  showing  that  the  employer's  proffered explanation is unworthy of credence.

<u>Burdine</u>, 450 U.S. at 256.  The Supreme Court explained further in <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 508-09 (1993), that the jury's disbelief of the employer's  proffered  explanation  does  not  mandate  a  finding  of  intentional discrimination but rather *permits* the jury to make that finding.  The Court elaborated:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may,  together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact

of intentional discrimination. . . .

Hicks, 509 U.S. at 511 (footnote omitted)(emphasis in original); accord Hall v. Ala. Ass'n of School Bds., 326 F.3d 1157, 1167 (11th Cir. 2003)("[T]he mere disbelief of the employer's proffered reason does not 'compel' a finding of discrimination.").

### 2.   **Plaintiff's Title VII Claims Against Frederick Brown**

Defendants argue that Defendant Frederick Brown cannot be held liable for Plaintiff's Title VII claims because he was not Plaintiff's "employer" for purposes of that statute.  (Doc. 23, Def. Br., p. 7).  The court agrees. "Individual capacity suits under Title VII are . . . inappropriate.  The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."  Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991)(citations omitted) (emphasis in original).

Accordingly, Defendants' motion for summary judgment is **GRANTED** on Plaintiff's Title VII claims against Defendant Brown.

### 3.   **Plaintiff's Specific Claims of Discrimination**

In Count One of Plaintiff's complaint, he alleges that Defendants discriminated against him because of his race (Asian) and national origin (Thai) in violation of Title VII.  (Compl., ¶¶ 35-39).  In Count Four of his complaint, Plaintiff alleges that Defendants denied him promotion in August 2006 and August 2007 "based solely on the race of plaintiff . . . ."  (Compl., ¶¶ 76-77).

14

Plaintiff does not specify the statutory basis for his claim in Count Four.  Because Plaintiff's brief in opposition to Defendants' motion for summary judgment cites only Title VII to support his discrimination claims (see Doc. 27, Pl. Br., pp. 2, 4), the court analyzes Plaintiff's discriminatory failure to promote claim pursuant to Title VII.

Plaintiff does not clearly set forth, in his complaint or in response to Defendants' motion for summary judgment, the acts he contends were discriminatory.  However, Defendants have provided Plaintiff's responses to Defendant Brown's interrogatories, in which Plaintiff asserts that the following acts support his claim that his rights under Title VII were violated, and the court will consider these alleged act as the bases for Plaintiff's discrimination claims:

- He was subjected to racially motivated comments when he was referred to as "monkey" and a "Nazi";

- Negative employment references were made about him to the Lawrenceville Police Department;

- He "began to receive negative write-ups and received improper and inconsistent discipline during the sergeant promotion process in August 2006;

- He was "transferred to night shift for a two (2) week period after participating in an investigation of the department";

- He was not promoted in 2006 and 2007; and

15

- He was terminated.

(Def. Ex. 4, Interrog. Resp. No. 7).

### 4.    Timeliness of Certain of Plaintiff's Title VII Claims

Under Title VII, a charge of discrimination must be filed within 180 days of the last alleged act of discrimination.  See Stewart v. Booker T. Washington Ins., 232 F.3d 844, 848 (11th Cir. 2000) ("Title VII requires a plaintiff to file a charge with the EEOC no more than 180 days after 'the alleged unlawful employment practice occurred' " (quoting 42 U.S.C. § 2000e-5(e)(1))).  Defendants argue that any allegedly discriminatory action that occurred more than 180 days prior to Plaintiff's filing of his EEOC charge on August 14, 2007 is time-barred.  (Doc. 23, Def. Br., p. 6).  Thus, they contend, Plaintiff's claims with respect to the August 2006 promotion and any pre-February 15, 2007 event, including Officer Kerns's calling Plaintiff a "monkey" in 2005, are untimely.  (Id.).  Plaintiff responds, among other things, that the alleged discrimination was "an on-going course of discrimination," and therefore, no acts are time-barred.  (See Doc. 27, Pl. Br., p. 2).  He also contends that even if certain acts are time-barred, "they are instructive and provide evidence of present discrimination."  (Id.).

In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court rejected a Title VII plaintiff's attempt to link discrete acts together as one "practice" or "ongoing violation that can endure or recur over a period of time" so that he could maintain that his administrative charge was timely.  Id. at 110-11.

16

The Court stated that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' " Id. at 110.  Examining the language of 42 U.S.C. § 2000e-2, the Court noted that "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing." Id. at 111.  The Court concluded that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113.  Finally, the Court determined:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice."

Id. at 114.[8]

Plaintiff's failure to promote claim arising from the August 2006 promotion decision is clearly time-barred as Plaintiff did not file an EEOC charge complaining of that decision within 180 days of the decision.  See, e.g., Cantrell v. Jay R. Smith Mfg. Co., 248 F. Supp. 2d  1126, 1134-35 (M.D. Ala. 2003)(alleged unlawful acts of demotion including changes in job title, membership in several committees, job duties and job description; decrease in trips to job sites; exclusion from trade shows, departmental activities and the "information loop"; and relocation of plaintiff's office occurred more than 180 days before EEOC charge

---

[8] The Court reversed the holding of the lower court, which had applied the "continuing violations doctrine" to "serial violations" and had held that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." Id. at 114.

filed and Plaintiff's Title VII demotion claims therefore failed for lack of exhaustion and were time-barred (citing <u>Morgan</u>)); <u>see also</u> <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 280 (5th Cir. 2004) ("Under <u>Morgan</u>, discrete acts such as failure to train and refused admission to an MBA program, which are separately actionable, may not be pursued outside the relevant limitations period."); <u>Buzzi v. Gomez</u>, 62 F. Supp. 2d  1344, 1352 (S.D. Fla. 1999) (allegations of "denied promotions, training and transfer" are "discrete acts").[9]  Accordingly, Defendants' motion for summary judgment is **GRANTED** on Plaintiff's Title VII failure to promote claim arising from the August 2006 promotion decision.

With respect to Plaintiff's allegation that he was subjected to racially derogatory language, including being called a "monkey" in 2005, the court will consider that allegation in connection with Plaintiff's claims that he was not promoted in August 2007 and that he was terminated because of his race and national origin, rather than viewing that allegation as a separate claim of discrimination.[10]

---

[9] For the same reason, Plaintiff's claims concerning the "negative write-ups and . . . improper and inconsistent discipline" Plaintiff alleges to have received "during the sergeant promotion process in August 2006" (<u>see</u> Def. Ex. 4, Interrog. Resp. No. 7) are time-barred.

[10] Plaintiff does not appear to claim that he was subjected to a hostile work environment on the basis of his race or national origin.  Even if Plaintiff's complaint could be read to make such a claim, that claim would fail because he has identified only three derogatory statements in a two-year period that were, according to Plaintiff, based on his race or national origin: Kerns's criticism of Plaintiff's English in 2005, Kerns's reference to Plaintiff as a "monkey" in 2005, and Chief Brown's reference to Plaintiff as a "Nazi" in August 2007.  (<u>See</u> Sridej Dep., pp. 67-69, 119).  Those incidents are insufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment so as to establish a hostile work environment.  <u>See, e.g.</u>, <u>Lee v. Reinhardt Motors, Inc.</u>, No. 2:05cv235-CSC, 2006 U.S. Dist. LEXIS 78093, at *39 (M.D. Ala. Oct. 25, 2006) ("Undoubtedly, the drawing and explanation by Wilcutt was racially offensive; however, this single incident does

### 5.   <u>Analysis of Plaintiff's Timely Filed Claims</u>

#### a.   <u>Negative Employment Reference</u>

There is evidence that Chief Brown called Chief Randy Johnson of the Lawrenceville Police Department while Plaintiff was on sick leave in August of 2007, prior to his termination, to advise Chief Johnson that Plaintiff was on sick leave and to make sure Plaintiff was not in a City of Auburn uniform.  (Brown Dep., pp. 77-78; Johnson Aff., Def. Ex. 3, ¶ 2).  Chief Brown explained that he called Johnson because he knew that Plaintiff was working as a security officer at a movie theater in the City of Lawrenceville.  (Brown Dep., pp. 78-79).  Chief Brown did not advise Johnson of the reason for the sick leave, and he "did not ask [Johnson] to do anything as a result of this information"; Johnson "interpreted [the call] as a courtesy call, so that if [his] department responded to a situation involving [Plaintiff], [they] would know that he was not a sworn officer of the City of Auburn."  (Johnson Aff., ¶¶ 2, 3).

Defendants argue that "[t]here was no racial overtone to that call" (Doc. 23, Def. Br., p. 11), and the court agrees.  Plaintiff has presented no evidence that Chief Brown called Chief Johnson because of Plaintiff's race or national origin.

---

not rise to the level of a racially hostile work environment."); <u>Marcelin v. Eckerd Corp. of Fla., Inc.</u>, No. 8:04-CV-491-T-17MAP, 2006 U.S. Dist. LEXIS 18097, at *23 (M.D. Fla. Apr. 10, 2006) (three discriminatory remarks made by supervisor in "slightly less than one year" were "not sufficiently severe or pervasive as a matter of law to make a sufficient showing under [<u>Harris v. Forklift Sys. Inc.</u>, 510 U.S. 17 (1993)]   that Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult"); <u>Smith v. MGA, Inc.</u>, No. 1:04-CV-1216-WKW (WO), 2006 U.S. Dist. LEXIS 15529, at *13-15 (M.D. Ala. Mar. 29, 2006) (two racially offensive comments by supervisor insufficient to establish a hostile work environment).

Moreover, Plaintiff has not made any showing that Chief Brown's telephone call to Johnson constituted a "negative employment reference[]" as alleged.  Nor has he shown that the call constituted an adverse employment action for purposes of a Title VII discrimination claim, and the court finds that it did not.  See Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001) ("[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." (emphasis in original)).

Accordingly, Defendants' motion for summary judgment is **GRANTED** on Plaintiff's Title VII claim concerning an alleged "negative employment reference."

### b.    <u>Transfer to Night Shift</u>

Defendants argue that "[t]here is no evidence of either a race-based or retaliatory motive in the shift change," and they point to Plaintiff's own testimony that Chief Brown told him that he was transferring Plaintiff to the night shift because he knew Plaintiff could work with difficult people and could "handle the pressure." (Doc. 23, Def. Br., p. 12; <u>see also</u> Sridej Dep., pp. 55-56).  Defendants also argue that the two-week shift transfer was not an adverse employment action for purposes of Title VII because it involved no loss of pay, grade or benefits.  (Doc. 23, Def. Br., p. 13).

Plaintiff has not responded to Defendants' arguments about the shift change or discussed this claim at all in response to Defendants' motion for summary

judgment.  Therefore, this claim is deemed to be abandoned.  See  Fedorov, 194 F.

Supp. 2d  at 1393.    Accordingly, Defendants' motion for summary judgment is

**GRANTED** on Plaintiff's Title VII discriminatory transfer claim.

### c.    Failure to Promote in August 2007

Plaintiff alleges that he was denied promotion in August 2007 "based solely

on the race of plaintiff, and no other justifiable factor . . . ."  (Compl., ¶¶ 76, 77).

### (1)    Plaintiff's *Prima Facie* Case[11]

A  Title  VII  plaintiff  may  present  a  *prima facie*  case  of  promotion

discrimination by establishing the following elements:

> 1) [ ]he is a member of a protected class under Title VII; 2) [ ]he was
> qualified for the employment position in question; 3) [ ]he applied for
> the employment position in question and was rejected; and 4) the
> employment position remained open or was filled by a person outside
> the protected class to which the plaintiff belongs.

Walker v. Mortham, 158 F.3d 1177, 1179 n.2 (11th Cir. 1998), cert denied, 528

U.S. 809 (1999).[12]

---

[11] Plaintiff does not point to direct evidence of discrimination but instead relies on the McDonnell-Douglas/Burdine burden-shifting framework for proving a circumstantial case of discrimination.

[12] Citing Austin v. Progressive RSC, Inc., 265 F. App'x 836, 844 (11th Cir. 2008) (unpublished decision), Defendants argue that a plaintiff must establish as the fourth element that "other equally or less qualified employees who were not members of the protected class were promoted." There has been some disagreement in Eleventh Circuit cases about the requirements of the fourth element. Compare Lee v. GTE Fla., Inc., 226 F.3d, 1249, 1253 (11th Cir.) (proof of relative qualifications part of prima facie case), cert. denied, 532 U.S. 958 (2000), with Walker, 158 F.3d at 1193 (error to require plaintiff to prove relative qualifications as part of prima facie case). Apparently, this disagreement has not been resolved.  See Gray v. Vestavia Hills Bd. Of Educ., No. 08-11617, 2008 U.S. App. LEXIS 24419, *11 (11th Cir. Dec. 2, 2008).  It appears, however, that a plaintiff can satisfy the fourth element in accordance with Walker.  See id; see also  Austin, 265

The court finds that Plaintiff can establish a *prima facie* case of discrimination with respect to the August 2007 promotion to Sergeant because Plaintiff has shown that he is a member of a protected class, i.e., he is Asian and Thai; he was qualified for the promotion as evidenced by the fact that he was allowed to take the test to be considered for promotion; he applied for the Sergeant promotion and was rejected; and Corporal Nadeau, a non-Asian officer, was selected for the promotion.

### (2)   **Legitimate, Non-Discriminatory Reason For Employment Decision**

The employer's burden to articulate a legitimate, non-discriminatory reason for its employment decisions is one of production, not persuasion.  Standard, 161 F.3d at 1331.  This burden is "exceedingly light."  Turnes v. Amsouth Bank, N.A., 36 F.3d 1057, 1060-61 (11th Cir. 1994)(citations omitted).

Chief Brown, who made the decision to promote Nadeau instead of Plaintiff, testified about his reasons for selecting Nadeau over Plaintiff:

> The reason was that while Nadeau had less seniority with the department, he had more law enforcement experience in general, both in time and in depth.  I had hired him from Georgia State Patrol.  Also, I was concerned about Sridej's demonstrated lack of judgment during the preceding few months.  He had acted unprofessionally in a confrontation with a citizen at a convenience store on June 17, 2007, in which he escalated emotions at the scene and inappropriately pepper sprayed the father of an arrestee, while he was

F. App'x at 844 ("The fourth prong of the test may also be satisfied if the position was left open despite a plaintiff's proven qualification, or where a similarly situated employee outside the plaintiff's classification received the promotion instead.").

in handcuffs.  He pulled over a truck on June 29, 2007 for an expired tag, although the tag was valid.  He inappropriately ticketed a citizen for a parking violation on August 3, 2007 at a local bank, while off duty.

(Brown Aff., Def. Ex. 1, ¶ 5).

The undersigned finds that Defendant has met the "exceedingly light" burden of articulating a legitimate, non-discriminatory reason for the selection of Nadeau over Plaintiff.

### (3)   <u>Pretext</u>

Because Defendant has articulated a legitimate, non-discriminatory reason for selecting Nadeau over Plaintiff for the Sergeant position, Plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision" in order to survive summary judgment.  <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (quoting <u>Combs v. Plantation Patterns, Meadowcraft, Inc.</u>, 106 F.3d 1519, 1528 (11th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1045 (1998)).  The court's role at this juncture is to "evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  <u>Combs</u>, 106 F.3d at 1538 (citation and internal quotation marks omitted).  "[E]vidence sufficient to discredit a defendant's

23

proffered nondiscriminatory reasons for its actions, taken together with the plaintiff's prima facie case, is sufficient to support (but not require) a finding of discrimination." Id. at 1535. "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.' " Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006)(quoting Hicks, 509 U.S. at 515).

Plaintiff appears to make three arguments in an effort to show pretext:  he was better qualified than Nadeau, the officer who was selected; there is evidence that unlawful racial animus motivated the decision; and Chief Brown improperly relied on the recent incidents involving Plaintiff's issuance of a traffic citation and his use of pepper spray.  They are considered in turn.

### (a) **Relative qualifications**

Plaintiff asserts that "a genuine issue of material fact exists as to the decision not to promote Plaintiff Sridej despite his qualification for the position and his perfect score on the exam." (Doc. 27, Pl. Br., p. 5).  Even if Plaintiff was qualified for the position and did receive a higher score than Nadeau on the promotion examination, however, Plaintiff has not controverted Brown's stated reason for selecting Nadeau over Plaintiff, i.e., Nadeau's greater experience as a law enforcement officer, "both in time and in depth," because of his prior experience with the Georgia State Patrol.  When a plaintiff attempts to demonstrate pretext by contending that he was more qualified than the successful

24

candidate, he "must show that the disparities between the successful applicant's and [his] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.' " Brooks, 446 F.3d at 1163 (quoting Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004), cert. denied, 546 U.S. 960 (2005); and citing Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006) (per curiam) (noting that Court approved this language from Cooper)).[13]

Furthermore, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id.; accord Brooks, 446 F.3d at 1163 ("In the context of a promotion: 'a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by

---

[13] In Ash, the Supreme Court disapproved of the court's language in Cooper that "[p]retext can be established through comparing qualifications only when 'the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face.' " Ash, 546 U.S. at 456-57.

[discriminatory animus]' " (quoting <u>Alexander v. Fulton County, Ga.</u>,  207 F.3d 1303, 1339 (11th Cir. 2000))).

Nadeau's greater time and depth of experience might well have motivated a reasonable employer.  While Plaintiff may believe that his experience in the City of Auburn Police Department and test score should have weighed more heavily in the decision making, the Eleventh Circuit made clear in <u>Cofield v. Goldkist, Inc.</u>, 267 F.3d 1264, 1269 (11th Cir. 2001) that the employer is free to choose its own non-discriminatory selection criteria.  <u>See also</u> <u>Norrell v. Waste Away Group, Inc.</u>, 246 F. Supp. 2d  1213, 1223 n.12 (11th Cir. 2003) ("This high standard for establishing discrimination based on the relative qualifications of the competitors for a promotion serves the purpose of keeping the federal courts from second-guessing decisions made by employers in the course of their business."); <u>Pennington</u>, 261 F.3d at 1267 (" '[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motivate a reasonable employer.' " (quoting <u>Combs</u>, 106 F.3d at 1543 ("[F]ederal courts do not sit to second-guess the business judgment of employers."))).  Given the reasons cited by Brown for selecting Nadeau, the undersigned finds that a reasonable jury could not find that "the disparities between [Nadeau's] and [Plaintiff's] own qualifications were 'of such weight and significance that no reasonable person, in the exercise

of impartial judgment, could have chosen the candidate selected over the plaintiff.'" <u>Brooks</u>, 446 F.3d at 1163 (citations omitted).   Thus the relative qualifications of Plaintiff and Nadeau do not create a triable issue on the question whether Brown's reasons for selecting Nadeau were a pretext for discrimination. See <u>Brooks</u>, 446 F.3d at 1163-64.

### (b) <u>Purported evidence of racial animus</u>

Plaintiff offers, as evidence that Brown decided not to promote him because of his race or national origin, Plaintiff's deposition testimony, "I was told by previous employees of City of Auburn that there was conversations about my ethnic background involving the command staff, which is Captain Manley and Chief Brown.  And . . . that's the reason why I didn't get promoted because of my ethnic background."  (Doc. 27, Pl. Br., pp. 5-6; <u>see also</u> Sridej Dep., p. 57).   He also offers his own deposition testimony that another employee, Vince Schmidt, "said they don't like me.  They don't want to give me because who I am.   My background or where I come from."  (Doc. 27, Pl. Br., p.6; <u>see also</u> Sridej Dep., p. 61).

This testimony does not create an issue of fact as to pretext because it is inadmissible hearsay.  <u>See</u> Fed. R. Evid. 801(c) and 802; <u>see also</u> <u>Rojas v. Florida</u>, 285 F.3d 1339, 1343, n.3 (11th Cir. 2002) (Coworker's statement to plaintiff that

a supervisor told coworker that he did not have to listen to plaintiff because she is a woman was inadmissible hearsay); Macuba v. DeBoer, 193 F.3d 1316, 1324-25 (11th Cir. 1999) (unless proffered hearsay falls within one of the "hearsay exceptions," it is inadmissible and cannot be considered to defeat summary judgment).  Furthermore, Plaintiff has identified nothing in the record that would show the basis for the co-workers' alleged knowledge of discriminatory bias or knowledge of the reasons for the promotion decision.  The alleged statement by Schmidt does not even identify who did not want to give what to Plaintiff.  Plaintiff has pointed to no evidence that the persons who allegedly made these statements were involved in the decision not to promote him or that the decisionmaker, Brown, told them that the reason he did not promote Plaintiff was Plaintiff's "ethnic background."[14]   In short, Plaintiff's testimony about the conclusory assertions of other employees and former employees is insufficient to create an issue of fact as to pretext.  See Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value"); see also Hansen v. Perry Techs., 206 F. Supp. 2d  1223, 1225 (S.D. Fla. 2002) ("[M]ere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not

---

[14] To the extent that Plaintiff relies on Kerns's 2005 criticism of Plaintiff's English and his reference to Plaintiff as a "monkey" to show pretext, that reliance fails as there is no evidence that Kerns was involved in the decision not to promote Plaintiff.

create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment.").

Plaintiff also points to Chief Brown's reference to him as a "Nazi" as evidence of "racially-based motivation[]."  (Doc. 27, Pl. Br., p. 6).  However, Plaintiff has not shown that Brown's admitted reference to Plaintiff as a "traffic Nazi" was a racially derogatory reference.  It appears that Brown used that term to convey his sense that Plaintiff overzealously enforced the traffic laws, with the result that the department received citizen complaints about Plaintiff's actions  (Brown Dep., pp. 53-54), and Plaintiff himself testified that "[c]alling me a Nazi is like calling me a communist" (Sridej Dep., p. 64).  A reasonable jury could not conclude that Brown's use of that term shows that Brown did not promote Plaintiff because of his race or national origin.  Thus Brown's description of Plaintiff as a Nazi is not evidence of pretext.

### (c) Reliance on recent incidents

Finally, Plaintiff appears to question Brown's reliance on Plaintiff's performance to support Brown's decision not to promote Plaintiff.  Plaintiff asserts that Brown "was not at the location that day of the ticketing . . . and therefore would not have knowledge of where the gentleman was parked," and he asserts, with no citation to the record, that there was "no action for an incident involving

pepper spray. . . ." (Doc. 27, Pl. Br., p. 6).

Plaintiff has not made any showing, however, that Brown did not *believe* that Plaintiff acted inappropriately during those encounters.  Even if Brown were mistaken in his beliefs about Plaintiff's actions, such a mistake does not demonstrate pretext.  In Chapman, the court reiterated that:

> [F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [law prohibiting discrimination] does not interfere.  Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.

Chapman, 229 F.3d at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (internal quotation marks omitted)); see also Curtis v. TeleTech Customer Care Mgmt., Inc., 208 F. Supp. 2d  1231, 1245 (N.D. Ala. 2002) ("[P]roving pretext requires more than showing that the employer was wrong in its assessment of the underlying facts or was otherwise lacking in wisdom").

Plaintiff has failed to show that there is an issue of fact with respect to whether Defendant City of Auburn's articulated legitimate, non-discriminatory reasons for selecting Nadeau for the Sergeant position instead of Plaintiff were a pretext for unlawful discrimination based on Plaintiff's race or national origin.  Accordingly, Defendants' motion for summary judgment is **GRANTED** on Plaintiff's

Title VII failure to promote claim arising from the August 2007 promotion decision.

### d.    **Termination**

#### (1)    **Plaintiff's *Prima Facie* Case**

Defendants argue that Plaintiff cannot establish a *prima facie* case of discriminatory discharge because, while Plaintiff can show that he is a member of a protected class and that he was discharged, he cannot show that he was qualified for the position, or that his employer "treated a similarly situated employee outside [his] protected class more favorably or filled the former position with someone outside [his] protected class."  (Doc. 23, Def. Br., p. 9).  Plaintiff does not address whether he can make out a *prima facie* case of termination discrimination.

Although the court questions whether Plaintiff has shown the existence of an issue of fact on each element of his *prima facie* case, the court will assume without deciding that he has done so.  As discussed, *infra*, however, Plaintiff has failed to show that there is a jury issue on the question whether Defendant City of Auburn's articulated legitimate, non-discriminatory reason for terminating him was a pretext for race or national origin discrimination.

#### (2)    **Legitimate,   Non-Discriminatory   Reason   For Employment Decision**

Chief Brown, who made the decision to terminate Plaintiff, testified that the "primary reason" he terminated Plaintiff was Dr. Roger's evaluation and assessment that Plaintiff was unfit for unrestricted duty. (Brown Dep., p. 64). He explained that he also terminated Plaintiff because he questioned Plaintiff's "ability to make sound decisions in [the] field based on" an incident when Plaintiff used pepper spray on a handcuffed individual, an incident when Plaintiff stopped a truck with an unexpired tag and an incident when Plaintiff gave a ticket to a person who, Brown believed, was not illegally parked. (See Brown Dep., pp. 49-53, 65). The court finds that Defendant City of Auburn has met the "exceedingly light" burden of articulating a legitimate, non-discriminatory reason for terminating Plaintiff.

### (3)    **Pretext**

To the extent that Plaintiff relies on his denials that he acted inappropriately during the incidents cited by Brown, as discussed, *supra*, that reliance is unavailing as Plaintiff has done nothing to cast doubt on Brown's belief that Plaintiff acted inappropriately. See Boyce v. Belden, No. 3:99-CV-126 (DF), 2002 U.S. Dist. LEXIS 1550, at *27 (M.D. Ga. Jan. 30, 2002) ("The issue before the Court at this stage is not whether Defendant Walton County was correct in its determination of Plaintiff's performance; rather, the Court must examine whether Defendant Walton County made its employment decision because of these

perceptions of her performances, regardless of whether these perceptions were actually correct."). To the extent that Plaintiff relies on Brown's reference to him as a "Nazi" as evidence of pretext, as already discussed, that reliance fails.

Plaintiff questions Brown's decision to order Plaintiff to undergo a fitness for duty evaluation because Plaintiff was "already . . . found fit for duty . . . ." (Doc. 27, Pl. Br., p. 7). Plaintiff does not explain this statement or cite to record evidence in support of it, but presumably, Plaintiff refers to the fact that his physician had indicated that he would be able to return to duty on August 20, 2007. Brown explained, however, that he required Plaintiff to undergo the evaluation, despite the note from Plaintiff's physician, Dr. Schlossberg, releasing him to return to work on August 20, 2007, because Plaintiff had indicated that the reason for the sick leave was "stress," Dr. Schlossberg is not a psychologist, and Brown therefore doubted Schlossberg's assessment. (Brown Dep., pp. 42, 56). Plaintiff has not controverted that explanation. While Plaintiff may believe that Brown should simply have relied on the representations of Plaintiff's doctor to determine that Plaintiff was fit for duty, Brown was not required to do so, and his decision to send Plaintiff for an evaluation by a psychologist is not evidence of pretext.

Plaintiff also appears to cite as evidence of pretext the fact that he has been hired as a sworn officer since leaving the City of Auburn, "and therefore is fit for

33

duty." (Doc. 27, Pl. Br., p. 7).  The fact that another police department has found Plaintiff fit for duty does not controvert the fact that Dr. Rogers, a licensed psychologist, evaluated Plaintiff and reported to Chief Brown that he was not fit for duty prior to his termination.  Plaintiff's subsequent employment does not controvert Brown's reliance on Roger's report to find Plaintiff unfit for duty.

Finally, Plaintiff cites as evidence of pretext Chief Brown's testimony that other employees who were referred for psychological evaluations "were allowed to participate in a plan to recover," but Plaintiff was not.  (Doc. 27, Pl. Br., p. 7). Plaintiff has not shown, however, that Brown had concerns about the ability of any of those other employees "to make sound decisions in [the] field," concerns he had about Plaintiff (see Brown Dep., p. 65).  Even if Brown's treatment of other employees casts doubt on Brown's explanation that he terminated Plaintiff because Dr. Rogers assessed him as unfit for unrestricted duty, it is not evidence of pretext with respect to Brown's concern about Plaintiff's ability to make sound judgments in the field, a concern that Plaintiff has not otherwise shown to be pretextual.  The Eleventh Circuit has explained a Plaintiff's burden when more than one legitimate, nondiscriminatory reason is offered to explain the employer's action:  "In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered non-discriminatory reasons is pretextual." Chapman, 229 F.3d at 1037

(emphasis added).  Plaintiff has not met that burden of production.

Because Plaintiff has failed to show that there is an issue of fact with respect to whether Defendant City of Auburn's articulated legitimate, non-discriminatory reasons for terminating him were a pretext for unlawful discrimination based on Plaintiff's race or national origin, Defendants' motion for summary judgment is **GRANTED** on Plaintiff's Title VII termination claim.

C.   <u>**Plaintiff's Title VII Retaliation Claim (Count Two)**</u>

Plaintiff has not clearly stated in his complaint, or in response to Defendants' motion for summary judgment, the factual basis for his retaliation claim.  In fact, in his response to Defendants' motion for summary judgment, Plaintiff makes only a single passing reference to retaliation ("Plaintiff Sridej had been facing numerous acts of retaliation and racially-based motivations from the Captain of the police force."  (Doc. 27. Pl. Br., p. 6)).  He has not addressed Defendants' argument that he did not participate in any protected activity that would support a retaliation claim (<u>see</u> Doc. 23, Def. Br., p. 13), and he has not pointed to any evidence that could establish the elements of such a claim.  Thus, Plaintiff's retaliation claim is deemed to be abandoned, <u>see</u> <u>Fedorov</u>, 194 F. Supp. 2d  at 1393, and Defendants' motion for summary judgment is **GRANTED** on Plaintiff's retaliation claim (Count Two).

## D.   Plaintiff's Tortious Interference with Business Relationship Claim (Count Five)

In support of his tortious interference with business relationship claim (Count V), Plaintiff alleges that he and Town Center Value Cinemas entered into an agreement whereby Town Center "agreed to employ Plaintiff Sridej on a part-time basis as a security guard at a local theater." (Compl., ¶ 81). He alleges further that Defendant Brown knew about this agreement and "individually or through his agents, sent an email to the Lawrenceville Police Department regarding Plaintiff," in which "Defendant Brown (or his agent) falsely reported that Plaintiff Sridej was unfit to perform the duties required of him as a security guard with the intent to harm plaintiff financially and to induce Town Center Value Cinemas to sever its business relationship with Plaintiff Sridej." (Id. ¶ 83). Finally, Plaintiff alleges that Town Center terminated its employment relationship with Plaintiff on August 26, 2007 "as a direct result of Defendants' email correspondence with the Lawrenceville Police Department . . . ." (Id. ¶ 84).

"The elements of tortious interference with contractual relations, business relations, or potential business relations are:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual

36

obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Blakey v. Victory Equip. Sales, 576 S.E.2d 288, 292 (Ga. App. 2002) (citations omitted).  Defendants argue that summary judgment should be granted on this claim because there was no E-mail as Plaintiff alleges, and Chief Brown's only communication with Chief Johnson of the City of Lawrenceville Police Department, which occurred during a telephone call, was not improper or wrongful as required for a tortious interference claim.  (Doc. 23, Def. Br., p. 17).  Thus, Defendants argue, Plaintiff "cannot satisfy the requirements for a 'tortious interference' claim." (Id.).

In his deposition, Plaintiff testified that a City of Lawrenceville Police Officer told him that "somebody send [sic] information from Auburn to Lawrenceville Police Department . . . .  Something in effect that [Plaintiff] should not be at the Town Theater Center working as security anymore.  And for them to be a look out." (Sridej Dep., pp. 106-07).  Plaintiff never saw the E-mail (Sridej Dep., p. 107), and his testimony about what the officer told him is inadmissible hearsay.  Moreover, there is no such E-mail in evidence in this case.  Accordingly, Plaintiff has not created an issue of fact as to whether Defendant Brown, or anyone on his

behalf, sent an E-mail to the City of Lawrenceville Police Department concerning Plaintiff's fitness for duty, as alleged in his complaint.

As previously discussed, there is evidence that Chief Brown called Chief Randy Johnson of the City of Lawrenceville Police Department while Plaintiff was on sick leave to let him know that Plaintiff was on sick leave and should not be wearing a City of Auburn uniform.  (See Johnson Aff., Def. Ex. 3, ¶¶ 2, 3; Brown Dep., pp. 77-79).  According to Johnson, Brown did not give him any details about the sick leave, but simply told him that Plaintiff was on sick leave, and Brown did not "ask [Johnson] to do anything as a result of this information . . . ."  (Johnson Aff., Def. Ex. 3, ¶¶ 2, 3).  Plaintiff has made no showing that this communication was unlawful or improper, or that Brown "acted purposely and with malice with the intent to injure."  Furthermore, there is no evidence that Brown contacted, or directed anyone to contact, Plaintiff's part-time employer, i.e., Town Center Value Cinemas, in order to seek Plaintiff's dismissal as a security officer.[15]

Because Plaintiff has not shown the existence of an issue of fact on any element of his tortious interference claim, Defendants' motion for summary

---

[15] In support of his tortious interference claim, Plaintiff cites Brown's testimony that, after Plaintiff was terminated from the City of Auburn Police Department, he went to the theater and observed Plaintiff working in order to determine whether Plaintiff was wearing his City of Auburn uniform, and that Brown "had some small shop talk with some people" about Plaintiff.  (See Brown Dep., pp. 76-77, 79).  Plaintiff offers no evidence about the substance of these conversations, however.  (Doc. 27, Pl. Br., p. 4).  Furthermore, Plaintiff fails to explain how Brown's testimony creates an issue of fact on any element of his tortious interference claim.

judgment is **GRANTED** on that claim (Count Five).

## V.  <u>Plaintiff's Request for Continuance</u>

In his brief in response to Defendants' motion for summary judgment, "Plaintiff requests additional time pursuant to Federal Rule of Civil Procedure 56(f) to obtain affidavits presently unavailable from additional witnesses who have been identified as witnesses to the discrimination of Plaintiff Sridej including Robin Cheek and Vince Schmitt."   Plaintiff also writes that he "anticipates supplementing this Response with those affidavits."  (Doc. 27, Pl. Br., p. 7).

Fed. R. Civ. P. 56(f) provides:

If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) deny the motion;

(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order.

"A party requesting a continuance under this rule must present an affidavit containing specific facts explaining his failure to respond to the adverse party's motion for summary judgment via counter affidavits establishing genuine issues of

material fact for trial." <u>Barfield v. Brierton</u>, 883 F.2d 923, 931 (11th Cir. 1989).

As an initial matter, Plaintiff's request is improper as he failed to submit an affidavit setting forth the "specified reasons [he] cannot present facts essential to justify [his] opposition," as required by Fed. R. Civ. P. 56(f). Moreover, Plaintiff has not shown why he was unable to obtain the affidavits prior to the time for filing his response, and his simple assertion, without elaboration, that these witnesses were unavailable is not enough. Nor has Plaintiff shown what information these witnesses would provide, or how that information is necessary for him to respond to Defendants' motion for summary judgment. Accordingly, Plaintiff's motion for a continuance pursuant to Fed. R. Civ. P. 56(f) is **DENIED**.

## **SUMMARY**

For the foregoing reasons, the undersigned **ORDERS** that Defendants' Motion for Summary Judgment [Doc. 23] be **GRANTED** and that Plaintiff's claims against Defendants be **DISMISSED**.[16] Plaintiff's request for a continuance pursuant to Fed. R. Civ. P. 56(f) (<u>see</u> Doc. 27, p. 7) is **DENIED**.

**IT IS SO ORDERED**, this 31st day of March, 2009.

---

[16] Plaintiff has not amended his complaint to identify the "John Doe" defendants or taken steps to serve them with the summons and complaint. Therefore, his complaint against those unidentified defendants is dismissed pursuant to Fed. R. Civ. P. 4(m) for his failure to serve them within 120 days of filing the complaint, and pursuant to Fed. R. Civ. P. 41(b) for his failure to prosecute this action against them.

*Susan S. Cole*

SUSAN S. COLE
United States Magistrate Judge